FILED
SEP 6 2023
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. |
| SHAMMARA MUHAMMAD, | ) ) ) | 4:23CR477-HEA/SRW |
| Defendant. | ) ) | |

## INDICTMENT

The Grand Jury charges that:

### Introduction

1. The United States Small Business Administration (hereinafter "SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

2. To aid this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### The Paycheck Protection Program

3. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying

1

businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

5. The types of businesses eligible for a PPP loan included individuals who were self-employed or operated as a sole proprietorship, and who did not have any employees. The PPP loan application for a self-employed individual or sole proprietorship required such an individual to certify the individual's annual income or net profit, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year and to provide documentation showing the individual's annual income or net profit.

6. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

7. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, rent, and utilities for the business. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

8. To obtain forgiveness of a PPP loan, a borrower had to submit a PPP loan forgiveness application. In the forgiveness application, a borrower had to certify that the loan proceeds had been spent on payroll costs and other permitted expenses. Once approved for forgiveness, a borrower would owe nothing and would have no obligation to repay the PPP loan.

9. Borrowers who received a PPP loan were, in certain circumstances, permitted to apply for a second PPP loan, referred to as a "Second Draw" PPP loan. In the application for a Second Draw PPP loan, a borrower had to also certify that he or she had used the first PPP loan only for permitted expenses. A borrower was also required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

10. Harvest Small Business Finance LLC ("Harvest Finance") and BSD Capital, LLC d/b/a Lendistry ("Lendistry") acted as participating lenders in the PPP program, and in that capacity, accepted and processed PPP loan applications.

11. Loan applications submitted electronically to participating lenders caused interstate wire communications, including communications with the SBA and the subsequent wiring of funds.

12. Harvest Finance and Lendistry wired funds by means of interstate wire transmission to loan recipients once loans were reviewed and approved.

13. At all times Defendant Shammara Muhammad ("Defendant Muhammad") was a resident of St. Louis, Missouri, in the Eastern District of Missouri.

14. Defendant Muhammad maintained two accounts with Regions Bank ending in -6756 and -3080.

## The Scheme to Defraud

15. It was part of the scheme to defraud that Defendant Muhammad applied for two PPP loans with the intent to fraudulently obtain loan proceeds.

16. It was further part of the scheme to defraud that Defendant Muhammad falsely represented in her First Draw PPP loan application submitted through Harvest Finance that her total gross income for 2020 was $110,874.

17. It was further part of the scheme to defraud that Defendant Muhammad falsely represented in the First Draw PPP loan application that she was the sole proprietor of a childcare business.

18. It was further part of the scheme to defraud that Harvest Finance relied on the truthfulness of Defendant Muhammad's representations as to her income in reaching its decision to issue the loan.

19. It was further part of the scheme to defraud that Defendant Muhammad applied for a Second Draw Draw PPP loan through Lendistry.

20. It was further part of the scheme to defraud that. as with her fraudulent First Draw PPP loan application, Defendant Muhammad falsely represented in her Second Draw PPP loan application that her total gross income for 2020 was $110,874.

21. It was further part of the scheme to defraud that Defendant Muhammad falsely represented in the Second Draw PPP loan application that she was the sole proprietor of a childcare business.

22. It was further part of the scheme to defraud that Lendistry relied on the truthfulness of Defendant Muhammad's representations as to her income in reaching its decision to issue the loan.

4

## COUNTS 1 & 2: WIRE FRAUD
### (18 U.S.C. § 1343)

23.     The above paragraphs are incorporated by reference as if fully set forth herein.

24.     From on or about April of 2021, through on or about May of 2021, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

**SHAMMARA MUHAMMAD**,

devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participated in such a scheme with knowledge of its fraudulent nature, and for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below.

| COUNT | On or About DATE | LOAN APPLICATION | AMOUNT |
|---|---|---|---|
| 1 | April 17, 2021 | SBA Loan # 6233948805 Application for Shammara Muhammad submitted to obtain funds from Harvest Small Business Finance LLC | $20,833.00 |
| 2 | May 20, 2021 | SBA Loan # 7141469001 for Application for Shammara Muhammad submitted to obtain funds from BSD Capital, LLC dba Lendistry | $20,833.00 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of offenses in violation of Title 18, United States Code, Section 1343 as set forth in Counts 1 and 2, Defendant Muhammad shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds

5

traceable to such violations. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is $41,666.

    2.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney